UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

DEUTSCHE BANK NATIONAL TRUST : 
COMPANY, as Trustee of the HOME EQUITY : 
MORTGAGE LOAN ASSET-BACKED TRUST : 
Series INABS 2006-D, HOME EQUITY : 
MORTGAGE LOAN ASSET-BACKED :     REPORT AND
CERTIFICATES Series INABS 2006-D under the :     RECOMMENDATION
POOLING AND SERVICING AGREEMENT : 
DATED SEPT 1, 2006, :     No. 25-CV-1698-MKB-JRC
                         :
                  Plaintiff, :
                         :
    -against- :
                         :
SEGUNDO F. TACOAMAN A/K/A SEGUNDO : 
FRANCISCO TACOAMAN A/K/A SEGUNDO : 
TACOAMAN; CITIBANK (SOUTH DAKOTA), : 
N.A.; COMMISSIONER OF LABOR OF THE : 
STATE OF NEW YORK; EXTECH BUILDING : 
MATERIALS, INC.; "JOHN DOE #1" through : 
"JOHN DOE #12," the last twelve names being : 
fictitious and unknown to plaintiff, the persons or : 
parties intended being the tenants, occupants, : 
persons or corporations, if any, having or claiming : 
an interest in or lien upon the Subject Property : 
described in the Complaint, : 
                         :
                  Defendants. :

-----------------------------------------------------------------x

JAMES R. CHO, United States Magistrate Judge:

Plaintiff Deutsche Bank National Trust Company, as Trustee of the Home Equity

Mortgage Loan Asset-Backed Trust Series INABS 2006-D, Home Equity Mortgage Loan Asset-

Backed Certificates Series INABS 2006-D under the Pooling And Servicing Agreement dated

Sept 1, 2006 ("plaintiff") brings this foreclosure action against defendants Segundo F. Tacoaman

("Tacoaman"), Citibank (South Dakota), N.A. ("Citibank"), Commissioner of Labor of the State

of New York ("Commissioner"), and Extech Building Materials, Inc. ("Extech"), pursuant to

New York's Real Property Actions and Proceedings Law ("RPAPL"), Article 13.[1]  *See* Compl. ¶ 1, Dkt. 1.  Plaintiff seeks damages, attorneys' fees and costs, and a judgment of foreclosure and sale.  *Id.* at Wherefore Clause; Prop. J.; *see generally* Pl.'s Mem. in Supp. of Mot. for Default J. ("Pl.'s Mem."), Dkt. 19-20.  Upon plaintiff's application and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of the Court noted the default of the defendants on May 27, 2025.  *See* Clerk's Entry of Default, Dkt. 18.

Currently pending before this Court, on a referral from Chief U.S. District Judge Margo K. Brodie, is plaintiff's motion for default judgment.  *See* Order Referring Motion dated June 27, 2025; Mot. for Default J., Dkt. 19.  For the reasons set forth below, this Court respectfully recommends granting the motion and awarding plaintiff damages and additional relief as described below.

<strong>Relevant Factual and Procedural Background</strong>

The following facts are drawn from plaintiff's Complaint, supporting affidavits, and accompanying exhibits, and are accepted as true for purposes of this motion.  *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187-89 (2d Cir. 2015).

Plaintiff brought this diversity action to foreclose on a mortgage encumbering 92-29 76th Street, Woodhaven, New York 11421 in Queens County (the "Subject Property").  *See* Compl. ¶ 1.  Plaintiff alleges that it is a citizen of the State of California.  *See id.* ¶ 2.

On July 26, 2006, Tacoaman executed and delivered a promissory note in the principal

---

[1] The Court recommends granting plaintiff's request to dismiss the claims brought against "John Doe #1" though "John Doe #12," who were never served.  *See* Notice of Motion, Dkt. 19; [Proposed] Judgment of Foreclosure and Sale ("Prop. J.") at 7, Dkt. 19-21.  The Court further recommends amending the caption to substitute "Citibank, National Association" for "Citibank (South Dakota) N.A.  *See* Prop. J. at 7.

amount of $430,000.00, plus interest (the "Note"), secured by a mortgage on the Subject Property (the "Mortgage"), to IndyMac Bank, F.S.B.  *See* Compl. ¶ 10; Note, Dkt. 1-5; Mortgage, Dkt. 1-6.  On the same day, Tacoaman executed and delivered the Mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), as mortgagee and as nominee for IndyMac Bank, F.S.B., its successors and assigns, which was duly recorded in the Office of the City Register for the City of New York, on August 10, 2006.  *See* Compl. ¶ 11; Mortgage, Dkt. 1-6.  Thereafter, on January 28, 2008, the Mortgage was assigned from MERS, as mortgagee and as nominee for IndyMac Bank, F.S.B., to IndyMac Bank, F.S.B., which assignment was recorded in the Office of the City Register of the City of New York, on February 15, 2008.  *See* Assignment of Mortgage, Dkt. 1-8 at ECF page[2] 3.  By written assignment dated June 19, 2010, the Mortgage was assigned from IndyMac Bank, F.S.B. to plaintiff, which assignment was recorded in the Office of the City Register of the City of New York, on September 28, 2010.  *See* Compl. ¶ 13; Assignment of Mortgage, Dkt. 1-8 at ECF page 6.  The Note was transferred via allonge indorsed in blank.  S*ee* Compl. ¶ 14; Dkt. 1-5 at ECF page 8.

After Tacoaman defaulted on the original loan, by loan modification agreement effective on July 1, 2014, the missed payments were deferred to the loan's maturity date, and the principal balance increased to $643,546.98.  *See* Compl. ¶ 12; Home Affordable Modification Agreement ("Loan Modification Agreement"), Dkt. 1-7.  Under the modification, interest would continue to accrue only on $261,200.00 of the principal balance.  *See* Loan Modification Agreement, Dkt. 1-7 at ECF page 3.  Under the Mortgage and Note, Tacoaman was obligated to make monthly principal and interest payments, plus taxes and insurance.  *See* Compl. ¶ 10.  Under the

---

[2] References to the page numbers generated by the Court's electronic case filing system appear as "ECF page."

Mortgage, if Tacoaman failed to make a payment within thirty days of the due date, he would be in default. *See* Mortgage ¶ 22. If Tacoaman defaulted, the Note holder could exercise the right to force immediate payment of the full amount of the remaining principal, all accrued interest, and reasonable attorneys' fees and costs incurred. *Id.* ¶ 22. Since October 1, 2024, plaintiff has failed to make the required monthly payments. *See* Compl. ¶ 17. As a result, plaintiff alleges that Tacoaman has defaulted under the Mortgage by leaving an outstanding principal balance of $482,409.36. *See* Compl. ¶ 17; Decl. of Juliana Thurab ("Thurab Decl.") ¶¶ 8, 12, Dkt. 19-9.

On March 27, 2025, plaintiff commenced this action alleging, *inter alia*, that Tacoaman had failed to make payments in accordance with the terms of the Mortgage and Note. *See* Dkt. 1. Plaintiff also named the nominal defendants, alleging that they hold liens on the Subject Property that are subordinate to plaintiff's Mortgage. Compl. ¶¶ 4-6 & Exs. 2-4, Dkts. 1-2, 1-3, 1-4.

Tacoaman was served with the Summons and Complaint on April 14, 2025, and the nominal defendants were also served in April 2025. *See* Dkts. 9-12; *see also* Dkts. 13-16. Plaintiff properly served Tacoaman by delivering and leaving copies of the Complaint and Summons at the Subject Property with a person of suitable age and discretion. *See* Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2). On May 27, 2025, the Clerk of the Court entered a Certificate of Default against defendants after they failed to respond to the Complaint. *See* Dkt. 18. To date, defendants have not appeared or moved to vacate the entries of default.

On June 26, 2025, plaintiff filed the instant motion for default judgment. *See* Dkt. 19. By the instant motion, plaintiff seeks to recover: (1) $482,409.36 in outstanding principal; (2) interest through May 5, 2025 in the amount of $2,881.40 and at the rate of $11.65 per day until the entry of judgment; (3) escrow advances (including taxes and hazard insurance) in the amount of $5,110.95; (4) property inspection fees in the amount of $180.00; (5) attorneys' fees in the

4

amount of $6,800.00; and (6) costs in the amount of $1,807.50.  *See* Decl. of Jamie C. Krapf in Support of Attorneys' Fees ("Atty. Fee Decl.") ¶¶ 9, 12, Dkt. 19-6; Thurab Decl. ¶ 12, Dkt. 19-9; Decl. of Jamie C. Krapf in Support of Mot. For Def. J. ("Krapf Decl.") ¶ 16, Dkt. 19-1; Prop. J. Plaintiff further requests the appointment of a Referee to effectuate the sale and disburse the funds from such sale.  *See* Prop. J.  In support of the motion, plaintiff submitted a declaration, along with a copy of defendant Tacoaman's payment history and other payment and billing business records.

After the instant motion was referred to the undersigned, this Court issued an Order to Show Cause raising several issues, including diversity of citizenship of the parties and compliance with the procedural requirements of New York's Civil Procedure Law & Rules ("CPLR") and the RPAPL.  *See* Order to Show Cause, Dkt. 21.  The Court is satisfied with plaintiff's response to the Order to Show Cause, as discussed below.  *See* Resp. to Order to Show Cause, Dkt. 26.

At a hearing held on the instant motion on January 30, 2026, defendants failed to appear despite being served with notice of the hearing.  *See* Min. Entry dated 1/30/2026; Cert. of Service, Dkt. 28.

## Discussion

### I.     Standing

Since plaintiff is not an original party to the Note, this Court will first address plaintiff's standing to bring this foreclosure action.  *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*.").  "Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating

that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015) (quoting *Wells Fargo Bank, N.A. v. Rooney*, 19 N.Y.S.3d 543, 544 (2d Dep't 2015)).  "[E]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." *Id.* (quoting *U.S. Bank, N.A. v. Collymore*, 890 N.Y.S.2d 578, 580 (2d Dep't 2009)).  "Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff." *Id.* (quoting *Wells Fargo Bank, NA v. Ostiguy*, 8 N.Y.S.3d 669, 671 (3d Dep't 2015)).

Here, plaintiff alleges, and submits documentation to establish, that it has been in possession of the Note and has been assigned the Mortgage since June 19, 2010, which assignment was recorded on September 28, 2010.  *See* Compl. ¶ 13; Assignment of Mortgage, Dkt. 1-8 at ECF page 6; Allonge, Dkt. 1-5 at ECF page 8.  Plaintiff has provided copies of the Note and Mortgage as exhibits to the Complaint.  *See* Note, Dkt. 1-5; Mortgage, Dkt. 1-6.  Since plaintiff has submitted uncontroverted evidence that it held the Note and Mortgage when it commenced this action on March 27, 2025, this Court finds that plaintiff has standing to pursue this action.  *See Thompson*, 631 F. App'x at 15-16; *Blue Castle (Cayman) LTD v. 1767 TP Ave LLC*, No. 22-CV-9577, 2024 WL 4135194, at *4  (S.D.N.Y. Sept. 10, 2024) ("Attachment of the Note as an exhibit to the Complaint was sufficient to establish standing since it demonstrated that the plaintiff was in physical possession of the [N]ote at the time the action was commenced.") (internal quotation marks and citation omitted); *JXB 84 LLC v. Khalil*, No. 15-CV-6251, 2017 WL 1184001, at *3 (E.D.N.Y. Feb. 17, 2017), *report and recommendation adopted*, 2017 WL

1184141 (E.D.N.Y. Mar. 29, 2017).

## II.    Subject Matter Jurisdiction

Before a court can issue a default judgment, it must "determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).  Thus, this Court has an independent obligation to determine if subject matter jurisdiction exists over this case. *See Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006).

Here, plaintiff alleges subject matter jurisdiction based on diversity of citizenship. Compl. ¶ 8.  Diversity jurisdiction exists when the parties have complete diversity of citizenship and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a).  Complete diversity means that "all plaintiffs [are] citizens of states diverse from those of all defendants." *Pennsylvania Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117-18 (2d Cir. 2014).  Plaintiff bears the burden of proving that subject matter jurisdiction exists by a preponderance of the evidence.  *See Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 617-18 (2d Cir. 2019) ("It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction," and district courts "may not assume subject-matter jurisdiction when the record does not contain the necessary prerequisites for its existence."); *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016).

In the Complaint, plaintiff alleges that it is "organized under the laws of the United States" and that it "is a citizen of California."  Compl. ¶ 2.  However, plaintiff is suing in its capacity as a trustee of the Home Equity Mortgage Loan Asset-Backed Trust Series INABS

7

2006-D, Home Equity Mortgage Loan Asset-Backed Certificates, Series INABS 2006-D under

the Pooling and Servicing Agreement dated Sept 1, 2006.  A trustee's own citizenship controls

for purposes of determining diversity jurisdiction only if the trustee "possesses certain customary

powers to hold, manage, and dispose of assets for the benefit of others," because that authority is

what makes the trustee "a real party to the controversy."  *Navarro Sav. Ass'n v. Lee*, 446 U.S.

458, 464 (1980); *Wilmington Sav. Fund Soc'y, FSB as Tr. For Premium Mortg. Acquisition Tr.

v. Okunola*, No. 18-CV-2084, 2023 WL 9507759, at *2 (E.D.N.Y. Mar. 15, 2023).  The Court

must examine "the scope of [the trustee's] authority as delineated by the Trust Agreement."  *U.S.

Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Desrosiers*, No. 17-CV-7338, 2021

WL 5630899, at *4 (E.D.N.Y. Dec. 1, 2021)*; see Wilmington Sav. Fund Soc'y, FSB as Tr. Of

Aspen Holdings Tr. v. Fernandez*, 712 F. Supp. 3d 324, 331 (E.D.N.Y. 2024); *Okunola*, 2023

WL 9507759, at *2-3.

In response to the Court's Order to Show Cause, plaintiff has established that the trust

was created and is governed by a Pooling and Servicing Agreement (the "PSA"), which shows

that plaintiff has these customary powers.  *See* PSA, Dkt. 26-1.  Sections 2.01 and 8.13 of the

PSA describe the required level of control to make plaintiff (as the trustee) the real party in

interest for diversity purposes.  *See HSBC Bank USA, N.A. as Tr. For Deutsche Alt-A Secs.

Mortg. Loan Tr. v. Fenelon*, No. 24-CV-7716, 2025 WL 3546115, at *5 (E.D.N.Y. Dec. 9,

2025); *Okunola*, 2023 WL 9507759, at *2.

A national banking association is, for purposes of diversity jurisdiction, a citizen of the

state where its main office is located as designated in its articles of association.  *See* 28 U.S.C.

§ 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006); *OneWest Bank, N.A. v. Melina*,

827 F.3d 214, 219 (2d Cir. 2016).  Although plaintiff did not allege in the Complaint the state in

which its main office is located per its articles of incorporation, in a supplemental filing, plaintiff submitted proof that its headquarters is located in California. *See* printout from the Office of the Comptroller of Currency's website, Dkt. 26-2. Thus, the Court finds that plaintiff is a citizen of California.

In response to the Court's show cause order, plaintiff has also clarified defendant Tacoaman's citizenship. Counsel has confirmed through searches, including a Department of Motor Vehicles search, a Board of Elections search, and a postal search that the Subject Property is plaintiff's domicile. *See* Resp. to Order to Show Cause ¶ 9; Tacoaman searches re: domicile, Dkt. 26-3. As a result, the criteria for diversity jurisdiction is met, and this Court has subject matter jurisdiction over the dispute.

## III. Legal Standards

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. *See id.*; *see also* Fed R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). This first step is nondiscretionary. *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a default judgment. *See* Fed. R. Civ. P. 55(a), (b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." *Enron Oil*, 10 F.3d at 95-96. When

9

evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations and citations omitted).

## IV.    Pre-Foreclosure Procedures

Article 13 of the RPAPL provides for certain requirements that must be complied with in a foreclosure action, even in federal court. *See, e.g., Windward Bora LLC v. Durkovic as Tr. of McQueen Fam. Tr.*, No. 22-CV-411, 2024 WL 3455841, at *4-5 (E.D.N.Y. July 18, 2024); *Fernandez*, 712 F. Supp. 3d at 333-34. Section 1303 requires the plaintiff to serve a specific notice on the defendant, with the summons and complaint. *See* RPAPL § 1303. Section 1304 requires that plaintiff serve an additional notice at least ninety days before commencing a foreclosure action. *See id.* § 1304(1). That notice must be sent "by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage." *Id.* § 1304(2). RPAPL § 1306 requires that plaintiff file certain information with the Superintendent of Financial Services, within three business days of mailing the notice required by section 1304.[3] *See* RPAPL § 1306. Plaintiff is also required to serve a

---

[3] Section 1306(2), in turn, requires that "[e]ach filing delivered to the superintendent shall be on such form as the superintendent shall prescribe, and shall include at a minimum, the name, address, last known telephone number of the borrower, and the amount claimed as due and

special summons once the foreclosure action is filed.  *See* RPAPL § 1320.  Finally, RPAPL § 1331 requires that plaintiff file a notice of pendency of the action, as well as a copy of the complaint, in the clerk's office of the county where the subject property is located.  *See* RPAPL §§ 1331, 6511(a) ("Unless it has already been filed in that county, the complaint shall be filed with the notice of pendency.").

After review of plaintiff's response to the Court's Order to Show Cause, the Court finds that plaintiff has complied with each of the statutory requirements.  First, plaintiff's process server avers that he served on Tacoaman the notice required by section 1303 with the Summons and Complaint, and the notice attached to the Complaint complies with the requirements contained in section 1303.  *See* [Amended] Summons Returned Executed, Dkt. 13.  Plaintiff has also submitted a Proof of Filing Statement from the New York State Department of Financial Services stating that plaintiff filed the information required by section 1306 on November 8, 2024.  *See* Proof of Filing Statement, Dkt. 19-18.  Plaintiff's process server further avers that he served the special summons required by section 1320 on Tacoaman, and the summons submitted contains the content required by section 1320.  *See* [Amended] Summons Returned Executed, Dkt. 13; Resp. to Order to Show Cause ¶ 13; email to process server with documents sent for service, Dkt. 26-6.  Plaintiff has also established compliance with section 1304(2)'s requirement that the 90-day notice be mailed to the borrower.  *See* Thurab Decl. ¶ 10, Dkt. 19-9; Dkt. 19-17 (mailings).  Finally, plaintiff has demonstrated that it filed the Complaint with the Notice of Pendency in the Queens County Clerk's Office.  *See* Resp. to Order to Show Cause ¶ 12; Dkt. 26-5.

---

owing on the mortgage, and such other information as will enable the superintendent to ascertain the type of loan at issue."  RPAPL § 1306(2).

11

Section 3012-b(a) of the CPLR requires that a plaintiff seeking foreclosure on a residential home attach to the complaint "a certificate, signed by the attorney for the plaintiff, certifying that the attorney has reviewed the facts of the case and that . . . to the best of such attorney's knowledge, information and belief there is a reasonable basis for the commencement of such action." CPLR § 3012-b(a). In response to the Court's Order to Show Cause, plaintiff concedes that it did not file the required certificate with the Complaint, but has now corrected its omission. *See* Resp. to Order to Show Cause ¶ 14, Dkt. 26; Certificate of Merit, Dkt. 26-7. Since counsel avers that she prepared such a certification, but inadvertently failed to file it with the original Complaint, the Court deems the certificate filed *nunc pro tunc*. *See Bank of New York Mellon v. Silverberg*, 156 N.Y.S.3d 874, 875 (2d Dep't 2022) (CPLR "authorizes, but does not require, dismissal of the action . . . as a sanction for the willful failure to" comply with section 3012-b). Plaintiff, therefore, has now demonstrated its compliance with New York's statutory foreclosure requirements.

## V.    Mortgage Foreclosure

### A. Applicable standards

Under New York law, "[t]o foreclose on a mortgage, a plaintiff must demonstrate (1) the existence of a mortgage; (2) ownership of the mortgage; and (3) the defendant's default in payment on the loan [secured by the mortgage]." *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Kings Cnty. Pub. Admin.*, No. 22-CV-7925, 2023 WL 7169000, at *3 (E.D.N.Y. Sept. 13, 2023) (internal citation and quotation marks omitted), *report and recommendation adopted*, 2023 WL 7167515 (E.D.N.Y. Oct. 31, 2023); *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Robedee*, No. 22-CV-809, 2022 WL 18284844, at *4 (E.D.N.Y. Dec. 5, 2022), *report and recommendation adopted*, 2022 WL 17850116 (E.D.N.Y. Dec. 22, 2022). Once the plaintiff submits the

12

mortgage, the unpaid note, and evidence of the default, it has established a *prima facie*

entitlement to judgment, and the burden shifts to the defendant to rebut the plaintiff's evidence.

*See Wilmington PT Corp. v. Tiwana*, No. 19-CV-2035, 2023 WL 4673777, at *7 (E.D.N.Y. June

12, 2023); *Kings Cnty. Pub. Admin.*, 2023 WL 7169000, at *3.

### B. Plaintiff is entitled to foreclosure

Here, the allegations in the Complaint, as well as the evidence submitted in support of

plaintiff's motion, establish that plaintiff is entitled to foreclosure.  Plaintiff has produced copies

of the Note, Mortgage, and assignments, thereby establishing the borrower's obligations arising

thereunder.  The Note, Mortgage, and accompanying documents establish the existence of a debt

owed by the borrower, and plaintiff's ownership of the Note and Mortgage.  *See Wilmington*

*Sav. Fund Soc'y, FSB as Tr. for Carlsbad Funding Mortg. Tr. v. White*, No. 17-CV-2288, 2022

WL 5432771, at *8 (E.D.N.Y. July 27, 2022) (finding that the plaintiff had "the right to enforce

the . . . [m]ortgage" when it had "demonstrated possession of the [n]ote and accompanying

[m]ortgage prior to the commencement of the instant action [and] ha[d] produced . . . all relevant

assignment documents"), *report and recommendation adopted as modified*, 2022 WL 4235326

(E.D.N.Y. Sept. 14, 2022); *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 415 (E.D.N.Y.

2018) (finding that "copies of the Mortgage, Note, allonges, and chain of assignments" was

"evidence . . . that establishes a *prima facie* case of entitlement to judgment").  Plaintiff also has

established that the borrower defaulted by failing to make the required monthly payments

beginning October 1, 2024 (*see* Thurab Decl. ¶ 8; Compl. ¶ 17).  *See Freedom Mortg. Corp. v.*

*McLain*, No. 23-CV-1309, 2023 WL 8473948, at *3 (E.D.N.Y. Oct. 12, 2023), *report and*

*recommendation adopted*, 2023 WL 7320257 (E.D.N.Y. Nov. 7, 2023); *Bent*, 321 F. Supp. 3d at

415 (finding that affidavit stating that "defendant . . . failed to cure the default" was sufficient

13

proof of borrower's default). Tacoaman's default triggered plaintiff's right to accelerate the loan and to require full payment of the principal amount outstanding. *See* Mortgage ¶ 22.

Because defendants have not answered the Complaint or otherwise opposed the instant motion, they have failed to rebut plaintiff's *prima facie* case showing that it is entitled to foreclosure. *See Kings Cnty. Pub. Admin.*, 2023 WL 7169000, at *3; *Sec'y of U.S. Dep't of Hous. & Urb. Dev. V. Nassau Cnty. Pub. Admin. As Admin. Of the Estate of Ella Mae Key a/k/a Mae Key, Deceased*, No. 19-CV-3547, 2023 WL 2421676, at *7 (E.D.N.Y. Feb. 9, 2023).

### C.  Other subordinate lienholders

Plaintiff names Citibank, the New York Labor Commissioner and Extech Building Materials as subordinate lien holders. In attachments to the Complaint, plaintiff has submitted proof of the judgments held by each of the lien holders. *See* Citibank Judgment, Dkts. 1-2, Commissioner of Labor Judgment, Dkt. 1-3; Extech Building Judgment, Dkt. 1-4. Plaintiff alleges that these nominal defendants "have or may claim to have, some interest in, or lien upon the Property, or some part thereof, which interest or lien, if any, is subject and subordinate to the lien of the Mortgage being foreclosed herein." Compl. ¶ 23.

Section 1311 of the RPAPL requires that the necessary parties to a mortgage foreclosure action include "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff." RPAPL § 1311(3). "This rule 'derives from the underlying objective of foreclosure actions – to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale.'" *Bank of Am., N.A. v. 3301 Atl., LLC*, No. 10-CV-5204, 2012 WL 2529196, at *14 (E.D.N.Y. June 29, 2012) (quoting *NC Venture I, L.P. v. Complete Analysis, Inc.*, 803 N.Y.S.2d 95, 97-98 (2d Dep't 2005)). Default judgment is appropriate

14

against such a defendant where the complaint alleges "nominal liability," *i.e.*, that any judgments or liens a defendant may have against the property are subject and subordinate to plaintiff's lien. *See E. Sav. Bank, FSB v. Rabito*, No. 11-CV-2501, 2014 WL 4804872, at *7 (E.D.N.Y. Sept. 10, 2014), *report and recommendation adopted*, 2014 WL 4804901 (E.D.N.Y. Sept. 26, 2014). "When a default judgment is entered against a defendant with a 'nominal interest' in the property, any such interest in the relevant property is terminated." *Windward Bora LLC v. Baez*, No. 19-CV-5698, 2020 WL 4261130, at *3 (E.D.N.Y. July 24, 2020).

Plaintiff has properly served the nominal defendants with the Summons and Complaint, as well as the motion for default judgment. *See* Dkts. 10, 11, 12, 20. These defendants have not challenged the claim that their interests are subordinate to plaintiff. Since plaintiff has established the existence of these judgments by submitting evidentiary documentation demonstrating the lien holders' interests in the property, there is sufficient evidence to find that Citibank, the Commissioner of Labor of the State of New York and Extech Building are necessary parties in this matter and that the Court should enter default judgment against them. *See McLain*, 2023 WL 8473948, at *4 (recommending granting default judgment based on documents demonstrating defendant's interest in the subject property); *CIT Bank, N.A. v. McDonnell*, No. 18-CV-476, 2023 WL 2361381, at *9 (E.D.N.Y. Feb. 2, 2023) (recommending granting default judgment against nominal defendants alleged to have liens subordinate to plaintiff); *Courchevel 1850 LLC v. Donaldson*, No. 16-CV-6803, 2018 WL 1830809, at *5 (E.D.N.Y. Feb. 1, 2018) (recommending granting default judgment against the Commissioner of Labor of the State of New York), *report and recommendation adopted*, 2018 WL 5777018 (E.D.N.Y. Nov. 1, 2018).

Accordingly, this Court respectfully recommends **granting** plaintiff's motion for default

15

judgment as discussed further below.

## VI.   Damages

While the allegations of a complaint concerning liability are deemed admitted upon entry of default, allegations relating to damages are not.  *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).  Rather, a court must ensure that there is an evidentiary basis for the damages sought by a plaintiff before entering judgment in the amount demanded.  *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Joe Hand Promotions, Inc. v. Levin*, No. 18-CV-9389, 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019) (holding that a hearing is "not necessary as long as [the Court] ensure[s] that there was a basis for the damages specified In the default judgment") (alterations in original, internal quotations omitted); *Fustok*, 873 F.2d at 40 (noting that a court may rely on detailed affidavits and documentary evidence as the basis for determining damages to be awarded in a default judgment).

For the reasons set forth below, this Court concludes that a hearing on the issue of damages is unwarranted and respectfully recommends awarding plaintiff relief as discussed below.

### A.  Outstanding Principal

Plaintiff requests recovery of a principal balance of $482,409.36 ($212,611.37 + $269,797.99).  *See* Thurab Decl. ¶ 12.  Pursuant to the terms of the Loan Modification

16

Agreement, Tacoaman agreed to pay $643,546.98 in principal. *See* Compl. ¶ 12; Loan Modification Agreement ¶ 3(B), Dkt. 1-7. The terms of the loan provide that in the event of the borrower's default, plaintiff is entitled to the full amount of the outstanding loan principal. *See* Mortgage ¶ 22. As set forth in the Thurab declaration, and supported by plaintiff's data compilations, Tacoaman failed to make payments on the unpaid principal balance of $482,409.36, as of October 1, 2024. *See Fenelon*, 2025 WL 3546115, at *8; *Durkovic*, 2024 WL 3455841, at*7; *McLain*, 2023 WL 8473948, at *5; Dkt. 19-19 at ECF pages 4-8, 23. The Court, therefore, recommends awarding plaintiff **$482,409.36** for the unpaid principal balance.

### B. Interest

Plaintiff requests interest on the interest-bearing portion of the unpaid principal balance from September 1, 2024 through May 5, 2025. *See* Thurab Decl. ¶ 12 (unpaid interest-bearing principal balance of $212,611.37); Prop. J. The terms of the Loan Modification Agreement provide that interest accrues on the "Interest Bearing Principal Balance" at a rate of 2 percent per year. *See* Loan Modification Agreement ¶ 3, Dkt. 1-7.[4] Applying the 2 percent annual interest rate to the unpaid interest-bearing principal balance of $212,611.37, interest accrues at a rate of $11.65 per day (($212,611.37 x 2 percent) / 365 days). *See* Dkt. 19-19 at ECF pages 8, 23. Accordingly, based on the Court's calculations, the Court recommends awarding plaintiff **$2,877.55**[5] in interest from September 1, 2024 through May 5, 2025 ($11.65 x 247 days), plus additional interest at the rate of **$11.65** per day from May 6, 2025 until the entry of judgment.

---

[4] As discussed above, under the terms of the Loan Modification Agreement, the new principal balance on the loan became $643,546.98. Dkt. 1-7 at ECF page 3. Of that principal balance outstanding, $382,346.98 was treated as a non-interest bearing principal forbearance. *Id.* Thus, the interest-bearing principal balance at the time of the loan modification was $261,200.00. *Id.* As of the filing of the motion for default judgment and as set forth in the Thurab declaration, the unpaid interest-bearing principal balance totaled $212,611.37. Thurab Decl. ¶ 12.

[5] Plaintiff requested interest in the amount of $2,881.40. *See* Thurab Decl. ¶ 12.

### C. Escrow Advances and Property Inspection Fees

Plaintiff seeks to recover escrow advances totaling $5,110.95, including $2,463.41 in tax disbursements and $2,647.69 in insurance disbursements, minus a deduction of $0.15 for an "Escrow Credit." *See* Thurab Decl. ¶ 12. In addition, plaintiff seeks to recover $180 in property inspection fees. *Id.* The Mortgage provides that Tacoaman is required to pay with each monthly payment, "escrow items," including, "taxes, assessments, water charges" and "hazard or property insurance covering the Property." Mortgage ¶¶ 3, 4, Dkt. 1-6. Tacoaman further agreed that "[i]f, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due . . . I will pay to Lender whatever additional amount is necessary to pay the Escrow items." *Id.* Moreover, Tacoaman agreed that if he fails to make insurance payments, "Lender may obtain insurance coverage, at Lender's option and [borrower's] expense. . . . Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument . . . [and] will bear interest at the interest rate set forth in the Note." *Id.* ¶ 5. In addition, the Mortgage provides that plaintiff "may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property . . . including, but not limited to, attorneys' fees, property inspection and valuation fees." *Id.* ¶ 14.

Plaintiff provides an "escrow transaction history," with a breakdown of itemized charges and payments or "credits" that make up the escrow balance, including those payments made by plaintiff. *See* Account History, Dkt. 19-19 at ECF pages 14-22. Plaintiff has sufficiently demonstrated that it is entitled to recover the cost of insurance and taxes that it paid related to the Subject Property in the amount of $5,110.95.

18

In addition, plaintiff has submitted a list of the individual property inspections and corresponding charges. *See* Dkt. 19-19 at ECF pages 25-26.

In sum, since plaintiff has corroborated its request for these costs with a declaration and the relevant business records, the Court recommends granting the amount sought of **$5,110.95** in escrow advances and **$180.00** in property inspection fees. *See ARCPE Holding, LLC v. 9Q4U5E LLC*, No. 19-CV-6417, 2022 WL 2467085, at *4 (E.D.N.Y. Apr. 15, 2022).

## VII.    Attorneys' Fees and Costs

Plaintiff seeks attorneys' fees in the amount of $6,800.00 and $1,807.50 in costs. *See* Atty. Fee Decl. ¶ 12, Dkt. 19-6. A plaintiff in a foreclosure action may recover attorneys' fees and costs against a borrower-defendant if the note or mortgage provides for such an award. *See Kings Cnty. Pub. Admin.*, 2023 WL 7169000, at *5; *Onewest Bank N.A. v. Louis*, No. 15-CV-597, 2016 WL 3552143, at *10 (S.D.N.Y. June 22, 2016), *report and recommendation adopted*, 2016 WL 4059214 (S.D.N.Y. July 28, 2016). The Note provides that in the event of default, "the Noteholder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, . . . includ[ing], for example, reasonable attorneys' fees." Note ¶ 7(E). The Mortgage provides: "In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements . . . and will have the right to add all reasonable attorneys' fees to the amount I owe Lender[.]" Mortgage ¶ 22. Accordingly, plaintiff is entitled to recover reasonable attorneys' fees resulting from the foreclosure proceeding and defendant's default.

In this Circuit, the amount of attorneys' fees to be awarded a prevailing party is determined by calculating the "presumptively reasonable fee." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009). To determine this fee, the Court begins by multiplying the number of hours spent on the litigation by "a reasonable hourly rate." *Hensley v.*

19

*Eckherhart*, 461 U.S. 424, 433 (1983).  Generally, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit."  *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983).

Here, however, plaintiff's counsel explains that because plaintiff's counsel "is paid a flat fee of $6,800 from its client for each foreclosure action handled," counsel provided an average of time spent on this action based on volume.  Atty. Fee Decl. ¶ 9.

"In general, courts in this Circuit will not award attorney's fees assessed at a flat-rate unless the supporting documentation is detailed enough to satisfy the Second Circuit's requirement that attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done."  *United States v. Basile*, No. 19-CV-7022, 2023 WL 5152519, at *4 (E.D.N.Y. June 27, 2023) (internal quotation marks and citations omitted), *report and recommendation adopted*, 2023 WL 5525096 (E.D.N.Y. Aug. 28, 2023).  Indeed, "[t]he absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances." *Id.*

In similar cases in this District, courts have reduced counsel's fee by 50 percent of the requested amount based on the record and affidavit provided.  *See Freedom Mortg. Corp. v. D'Amato*, No. 22-CV-7804, 2024 WL 662486, at *6 (E.D.N.Y. Feb. 17, 2024) (overruling plaintiff's objection); *McLain*, 2023 WL 8473948, at *8; *see also Freedom Mortg. Corp. v. Rich*, No. 22-CV-4827, 2024 WL 4250330, at *7 (E.D.N.Y. Mar. 8, 2024) (recommending award of $3,650, amounting to reduction of $2,000); *Freedom Mortg. Corp. v. Phillip*, No. 19-CV-1215, 2020 WL 9812917, at *7 (E.D.N.Y. Mar. 2, 2020) (recommending reducing counsel's fee to $2,500).

Based on the work reflected in the record in this matter and the work described in counsel's affidavit, it would be unfair to deny fees entirely. *See Nationstar Mortg. LLC v. Mullany*, No. 16-CV-5501, 2018 WL 4658437, at *6 (E.D.N.Y. Sept. 11, 2018) ("Given the amount of work reflected in the plaintiff's submissions and the work described in counsel's affirmation as having been performed, this Court finds an award for attorneys' fees is appropriate under the circumstances."), *report and recommendation adopted*, 2018 WL 4637352 (E.D.N.Y. Sept. 27, 2018). Instead, this Court finds it appropriate to reduce counsel's request by half to $3,400.00, which is generally consistent with the amount of fees awarded by courts in this District in similar circumstances. Accordingly, this Court respectfully recommends awarding attorneys' fees in the amount of **$3,400.00** or half of the amount requested.

Plaintiff also seeks an additional $1,807.50 for costs in this action, including the Court's filing fee, title search fees, service of process fees and the fee for filing the Notice of Pendency.[6] *See* Atty. Fee Decl. ¶ 12, Dkt. 19-6; Bill of Costs, Dkt. 19-5. As discussed above, the Mortgage permits plaintiff to "collect all costs and disbursements" in an action for foreclosure and sale. Mortgage ¶ 22. In addition, plaintiff has provided a detailed breakdown in the Bill of Costs, and supporting receipts. *See* Dkt. 19-5. Based upon the documentation plaintiff provided, this Court recommends awarding **$1,807.50** for costs and disbursements. *See McLain*, 2023 WL 8473948, at *8.

## VIII.   Judgment of Foreclosure and Sale and Appointment of Referee

Plaintiff requests appointment of a referee to effectuate a sale of the mortgaged property and to disburse the funds from such sale, pursuant to RPAPL § 1611. *See* Prop. J., Dkt. 19-21.

---

[6] Although the Bill of Costs includes "Nassau County Clerk Filing Fee for Notice of Pendency," the receipt demonstrates that the filing fee was paid to the Queens County Clerk. *See* Dkt. 19-5 at ECF page at 5.

Specifically, plaintiff requests the appointment of Scott H. Siller, Esq. as a referee to conduct the sale under the conditions outlined in the proposed Judgment of Foreclosure and Sale, including that the Subject Property be sold as one parcel. *See* Prop. J.

A plaintiff is entitled to foreclose upon and sell a property if it demonstrates "the existence of an obligation secured by a mortgage, and a default on that obligation." *1st Bridge LLC v. 682 Jamaica Ave., LLC*, No. 08-CV-3401, 2010 WL 4608326, at *3 (E.D.N.Y. July 13, 2010), *report and recommendation adopted*, 2010 WL 4607409 (E.D.N.Y. Nov. 4, 2010); *see also OneWest Bank N.A. v. Cole*, No. 14-CV-3078, 2015 WL 4429014, at *1 (E.D.N.Y. July 17, 2015) (authorizing foreclosure and sale of property upon entry of default judgment). Further, courts routinely appoint referees to effectuate the sale of foreclosed properties. *See, e.g.*, *Fenelon*, 2025 WL 3546115, at *9; *Cole*, 2015 WL 4429014, at *5 (awarding a judgment of foreclosure and sale under the supervision of specific referee requested by plaintiff).

Having determined that plaintiff has established its presumptive right to foreclose upon the Subject Property due to Tacoaman's default, this Court respectfully recommends the appointment of Scott H. Siller, Esq. as referee to conduct the sale of the Subject Property under the terms set forth in the proposed Judgment of Foreclosure and Sale (Dkt. 19-21). *See McLain*, 2023 WL 8473948, at *8 (recommending approval of referee); *Kings Cnty. Pub. Admin.*, 2023 WL 7169000, at *5 (same).

## Conclusion

For the foregoing reasons, this Court respectfully recommends granting plaintiff's motion for default judgment against defendants Segundo F. Tacoaman, Citibank (South Dakota), N.A., Extech Building Materials, Inc., and the State of New York Commissioner of Labor, and further recommends entry of a final judgment awarding damages as follows:

22

(1)    $482,409.36 in unpaid principal;

(2)    $2,877.55 in interest from September 1, 2024 through May 5, 2025, plus additional interest at the rate of $11.65 per day from May 6, 2025 until the entry of judgment;

(3)    $5,110.95 in escrow advances and $180.00 in disbursements (*i.e.*, property inspection costs); and

(4)    $3,400.00 in attorneys' fees and $1,807.50 in costs.

This Court further recommends the appointment of Scott H. Siller, Esq., as referee to conduct the foreclosure and sale of the Property under the terms set forth in the proposed Judgment of Foreclosure and Sale (Dkt. 19-21).  Finally, the Court recommends that the claims brought against "John Doe #1" through "John Doe #12" be dismissed and the caption be amended to substitute "Citibank, National Association" for "Citibank (South Dakota) N.A."

Any objections to the recommendations made in this Report must be filed with the Honorable Margo K. Brodie within 14 days after the filing of this Report and Recommendation and, in any event, on or before **February 26, 2026**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam) (discussing waiver under the former ten-day limit).

A copy of this Report and Recommendation is being electronically served on counsel. Further, by **February 17, 2026**, the Court directs plaintiff's counsel to serve on defendants a copy of this Report and Recommendation by overnight mail and first-class mail at the addresses below, and to file proof of service on ECF:

23

Segundo F. Tacoaman a/k/a Segundo
Francisco Tacoaman a/k/a Segundo
Tacoaman
92-29 76th Street a/k/a 9229 76th Street
Woodhaven, New York 11421

Citibank (South Dakota), N.A.
250 Conklin Street
Farmingdale, New York 11735

Commissioner of Labor of the
State of New York
W.A. Harriman Campus, Bldg. 12
Albany, New York 12226

Extech Building Materials, Inc.
43-87 Vernon Blvd.
Long Island City, New York 11101

**SO ORDERED**

Dated: Brooklyn, New York
February 12, 2026

s/ James R. Cho
James R. Cho
United States Magistrate Judge